# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RICHARD TERRY HEIT,

      Plaintiff,

v.

PORT HURON POLICE
OFFICERS MARCANO and SLY,

      Defendants.

_____/

Case No. 2:23-cv-12576
District Judge Laurie J. Michaelson
Magistrate Judge Anthony P. Patti

## <u>REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'</u>
## <u>MOTION FOR SUMMARY JUDGMENT (ECF No. 41)</u>

**I.     RECOMMENDATION:**  The Court should **GRANT** the defendants'

motion for summary judgment.  (ECF No. 41.)

**II.    REPORT:**

### A.    Background

On the evening of July 23, 2021, a woman called 911 in Port Huron,

Michigan.  She reported "a possible Domestic Violence incident occurring between

a male named RICHARD" and her daughter, "a female named STEPHANIE."

(ECF No. 41-2, PageID.258.)  The woman gave an address, and Port Huron police

officers Ashley Marcano and Jennifer Sly (together, "Officers") responded.

Footage recorded by the Officers' bodycams shows what happened next.  A man, later identified as Richard Heit, and a woman, later identified as Stephanie Gardner, argue on the front porch of a house.  Gardner spots Officer Sly and shouts that Heit had put his hands on her and threatened her.  Sly tells Heit to sit down on the front steps of the porch and Gardner to go inside the house.  Heit and Gardner both comply.

Shortly after, Officer Marcano interviews Gardner, who alleges the following.  Heit has been living with her at the house for the last month.  Earlier that day Heit had out of jealously shut off her alarm clock while she was napping, which caused her to miss a date.  A verbal argument ensued, and Heit "taunt[ed]" her.  (Defs.' Ex. 6, Body Camera Video of Marcano 3:20–22 [hereinafter Marcano Bodycam].)

Officer Marcano then asks Gardner, "When did it turn physical?" and Gardner describes a beating:

> When did it turn physical? When I told him to get out and I realized I should have locked the door and he came in and he threw that fan and he picked me up by my hair and the way that he had me I was like kind of over his back. So I had his– and I tried to defend myself. He ripped my earring out. So I don't know if he has marks; he probably does. But he slapped me on the floor right there. There's alcohol everywhere because he threw it at me.

(*Id.* at 3:22–49; Defs.' Ex. 8, Body Camera Video of Sly 9:27–55 [hereinafter Sly Bodycam].)  Gardner repeats that Heit "threw the fan at me" and points behind

2

Marcano.  (Marcano Bodycam 5:15–16; Sly Bodycam 11:20–21.)  Gardner also says that "there was a Crown Royal right there," and points to a nearby table.  (Marcano Bodycam 5:20–21; Sly Bodycam 11:25–26.)  Gardner then states, "He threw his Crown Royal.  That's why there's alcohol all over the floor there," and again points behind Marcano.  (Marcano Bodycam 5:22–25; Sly Bodycam 11:27–30.)  Marcano later turns around, and a black oscillating fan is standing upright and running near where Gardner had pointed.  (Marcano Bodycam 9:49–51.)

While Officer Marcano interviewed Gardner, Officer Sly interviewed Heit.  And Heit told a different story.  According to Heit: (1) Gardner was angry with him because he had forgotten to wake her up from her nap; (2) she began knocking over his guitar equipment and hit and scratched his back; and (3) he never beat her.

Although Gardner's and Heit's narratives conflicted, Gardner had injuries that corroborated her story.  She had a scratch on her chest (ECF No. 41-13) and a torn left earlobe (ECF No. 41-14).  Photographs that the Officers took that night show that Gardner's earlobe is red and swollen and has dried blood on it.  The photos also show that Heit had scratches on his back.  (ECF No. 41-15.)

The Officers arrested Heit that night.  That same evening, Gardner gave a written statement.  Her statement details that Heit "threw his crown royal liquid" and "a[n] oscillating fan" at her.  (ECF No. 45, PageID.447.)

3

Officer Marcano later wrote a report about the incident.  That report states that Gardner "had a difficult time explaining the manner in which HEIT was holding her.  She initially described it as a bear-hug, but then relayed that she believed it was more of a submissive move where her left arm was pinned behind her back."  (ECF No. 41-2, PageID.259.)

Following Heit's arrest, the county prosecutor charged him with violating Michigan's domestic-violence statute.  *See* Mich. Comp. Laws Ann. § 750.81. Heit was arraigned on July 25, 2021, roughly two days after his arrest, and bond was set at $10,000.  Heit did not post bond, so he remained incarcerated.

Gardner soon brought new allegations against Heit.  She told police that Heit had sexually assaulted her in July 2021 while she had been sleeping.  And she gave up her cell phone as evidence.  But this time Gardner's allegation did not add up: police discovered that she had been up all night texting on the evening that she alleged Heit had assaulted her.

Based on this investigation of Gardner's sexual-assault allegation, the prosecutor filed a *nolle prosequi* regarding the domestic-violence charge against Heit.  In Michigan, a "Nolle prosequi is [normally] a dismissal without prejudice which does not preclude initiation of a subsequent prosecution."  *People v. Reagan*, 235 N.W.2d 581, 587 (Mich. 1975).  Heit was released from detention on October 14, 2021.

This *pro se* action followed. Heit seeks damages from the Officers under 42 U.S.C. § 1983 for violating his Fourth Amendment rights and his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

The Officers now move for summary judgment. They argue that Heit's Fourth Amendment and due-process claims are barred by qualified immunity and that he cannot prove his equal-protection claim at trial.[1] The district judge referred that motion to me for a report and recommendation.

**B.    Standard**

### 1. Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

---

[1] In other words, the Officers do not invoke qualified immunity with respect to Heit's equal-protection claim.

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (quoting *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001)); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." (internal quotation marks and citations omitted)). Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat

6

summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The fact that Plaintiff is *in pro per* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512–13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Industrial & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary

judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### 2.    Qualified Immunity

Qualified immunity "shields officers from damages suits unless their conduct 'violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Clark v. Abdallah*, 131 F.4th 432, 444 (6th Cir. 2025) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When a defendant invokes qualified immunity at the summary judgment stage, the plaintiff must show two things to overcome it: (1) that "the facts, taken in the light most favorable to the plaintiff[], show that the [defendant] violated [his] constitutional right"; and (2) "the right was so clearly established at the time of the [defendant]'s conduct that the [defendant] would have understood that he was violating the plaintiff['s] rights."  *Id.*

### C.    Discussion

#### 1. Due Process Claim

The Due Process Clause of the Fourteenth Amendment prohibits States from depriving individuals of their liberty without due process of law.  U.S. Const. amend. XIV § 1.  Heit claims that the Officers "deprived [him] of his liberty

8

without due process of law." (ECF No. 1, PageID.1.) But Heit does not have a

viable due-process claim. While Heit may have lost his liberty during his pretrial

detention on the domestic-violence charge, it is the Fourth Amendment, and not

the Due Process Clause that "governs a claim for unlawful pretrial detention."

*Manuel v. City of Joliet*, 580 U.S. 357, 369 (2017). And, despite his conclusory

allegation, Heit fails to show—either in his pleadings or with admissible evidence

in his motion response—*how* anyone deprived him of due process once the arrest

was made and state-court criminal process was initiated. Instead, his argument

focusses on his dispute with the police about *who* they should have believed and,

therefore, who they should have arrested and charged. The Officers are entitled to

qualified immunity from any due-process claim.

### 2. Equal Protection Claim

Heit next claims that the Officers only arrested him because he is a male,

which violates the Equal Protection Clause. Indeed, "the decision to prosecute

may not be deliberately based upon an unjustifiable standard such as 'race, religion

or other arbitrary classification.'" *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th

Cir. 2000) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). Whenever

state officials violate this proscription, the constitutional tort of selective-

enforcement provides a remedy. *See id.* And the Officers do not dispute that these

principles apply to discriminatory arrests.  Heit accordingly may have a viable selective-prosecution claim.

To prevail on a selective-prosecution claim, Heit must prove three things: (1) that the Officers "single[d]" him "out . . . for prosecution" and "decided not to prosecute" women "in similar situations"; (2) that the Officers "initiate[d] the prosecution" against him "with a discriminatory purpose"; and (3) that his prosecution had "a discriminatory effect on" men.  *Id.* (quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)).

Heit stumbles on the first element.  To show that he was singled out for prosecution, "it is an absolute requirement that" he "make at least a *prima facie* showing that similarly situated persons outside [his] category were not prosecuted."  *Id.* (quoting *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997)).  Heit attempts to do this with data regarding the Officers' past domestic-violence arrests.  Per the data, of Officer Marcano's and Sly's combined one-hundred domestic-violence arrests, they arrested the man eighty-two and seventy-six percent of the time, respectively.  But Heit does not identify any specific instances when the Officers *should* have arrested the woman and not the man.

10

Stated differently, Heit offers nothing showing that the Officers let women off the hook for domestic violence.[2]

Heit also does not show discriminatory intent.  He infers that the Officers intentionally discriminated against him because they have arrested more men than women on domestic-violence charges.  But without evidence showing that the Officers let violent women walk, Heit does not even make out a *prima facie* Title VII case, much less meet the "much more demanding" standard for selective-enforcement claims.  *Id.* at 320.

Furthermore, the Court cannot, as Heit suggests, take judicial notice that "the current culture within America is decisively biased against men in favor of women, and is so in a number of ways when it comes down to a case where it is a man's word against a woman."  (ECF No. 45, PageID.439.)  Per Federal Rule of Evidence 201, a fact cannot be judicially noticed unless it "can be accurately and readily determined from sources whose accuracy cannot reasonably be

---

[2] The record of this case does not enlighten the Court as to the *actual frequency* of men assaulting women, as opposed to women assaulting men, within that municipality. If, *arguendo*, men are in fact the aggressors in these situations more often than women, it would hardly be surprising if more men ended up being arrested than women.

11

questioned." Fed. R. Evid. 201(b)(1). Heit makes no showing that the "current culture in America" toward men fits this description.[3]

Likewise, the Court cannot take Heit's word for it that "[it] is common and long established knowledge that in Port Huron, the authorities have a custom, practice, [and] policy that when women call, the police haul the man to jail." (ECF No. 45, PageID.436.) Heit points to two cases in support (*see id*. at 436–37), but they are not statistically significant and thus anecdotal, assuming that they are even supportive of his theory.

Heit does not come forward with any admissible evidence showing that the Officers violated his equal-protection rights. They are thus entitled to summary judgment on Heit's equal-protection claim.

### 2. Fourth Amendment Claim

#### a. Detention immediately following arrest

Last, Heit claims that the Officers "made an unlawful arrest and seizure of his person" which "resulted in [his] false imprisonment for eighty-one days." (ECF No. 1, PageID.1.) The Fourth Amendment tort of false arrest remedies warrantless arrests without probable cause. *See Sykes v. Anderson*, 625 F.3d 294,

---

[3] Heit seems to rely upon a note (presumably student written) from the *Michigan Law Review*. But law review notes and articles are not binding on any Court. He also cites a federal case out of the District of Rhode Island, but the cite does not match the case name given. And this too would not be binding, even if it is supportive.

305 (6th Cir. 2010). The tort also remedies detention that followed such an arrest up to the point when the plaintiff received process. *See id.* at 308. As such, Heit may bring a claim under the rubric of false arrest for his detention following his arrest up to arraignment; however, that is only two or three days of detention, not eighty-one.

### b. Post-arraignment detention

This does not leave Heit without a remedy for his post-arraignment detention. The Fourth Amendment tort of malicious prosecution remedies detention pursuant to legal process, so long as the process was wrongfully initiated. *See id.* But Heit's complaint does not discuss malicious prosecution, and the Officers' summary-judgment motion assumes that Heit does not bring a malicious-prosecution claim. Nor does Heit discuss such a claim in his response to the Officers' motion. "Thus, any malicious-prosecution claim is undeveloped. It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th Cir. 2005) (quoting *United States v. Layne,* 192 F.3d 556, 566 (6th Cir.1999)); *see also Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 774 (E.D. Mich. 2010) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its

bones." (quoting *Meridia Prods. Liab. Litig. v. Abbott Lab'ys*, 447 F.3d 861, 868

(6th Cir. 2006))).

### c. False arrest

To prevail on a false-arrest claim, Heit must prove that the Officers "lacked

probable cause to arrest" him. *Sykes*, 625 F.3d at 305 (quoting *Voyticky v. Village*

*of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). "An officer has probable cause

when, *at the moment the officer seeks the arrest*, the facts and circumstances within

the officer's knowledge and of which he had reasonably trustworthy information

are sufficient to warrant a prudent man in believing that the plaintiff had

committed or was committing an offense.'" *Barton v. Martin*, 949 F.3d 938, 950

(6th Cir. 2020) (citation modified) (emphasis added). Moreover, "[o]nce probable

cause is established, an officer is under no duty to investigate further or to look for

additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188

F.3d 365, 371 (6th Cir. 1999).

And "an officer 'is entitled to qualified immunity if he or she could

reasonably (even if erroneously) have believed that the arrest was lawful, in light

of . . . the information possessed at the time by the arresting agent.'" *Barton*, 949

F.3d at 950 (alteration in original) (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511

(6th Cir. 2008)). At bottom, "a court may determine that under the totality of the

circumstances, there was probable cause" and therefore that "police officers are

14

entitled to qualified immunity on [a] false arrest claim." *Edison v. Township of Northville*, 752 F. Supp. 3d 808, 825 (E.D. Mich. 2024) (citation modified).

The Officers had probable cause here. Before they arrested Heit, they knew that Gardner's mother had called 911 to report a domestic violence incident at a certain house. When they arrived at that house, they saw Heit and Gardner arguing on the front porch. Gardner then alleged that Heit had beaten her, and the Officers saw marks on her body which backed up her story. Although Heit denied Gardner's account, the Officers could reasonably have disbelieved him. And Heit does not deny that if he *had* beaten Gardner, then he would reasonably have violated Michigan's domestic-violence statute.

Heit pushes back and argues that the Officers ignored exculpatory evidence. He points to Gardner's allegation that he threw an oscillating fan at her, which he contends was disproven when Gardner pointed to an oscillating fan that was standing upright and running. But even if Gardner indeed pointed to the upright fan, the Officers could reasonably have concluded that someone picked up the fan and plugged it in after Heit threw it.

Heit also says that Gardner's written statement contradicts what she told the Officers, insofar as she said that he threw a Crown Royal bottle at her yet wrote that he threw the *liquid* in the bottle at her. But Gardner made her written

15

statement after the Officers had already arrested Heit.  So that statement does not inform the probable-cause analysis here.

Heit next says that if he had really torn out Gardner's earring, then her ear would have looked *worse* than it did.  But Gardner's ear was swollen and had dried blood on it.  This was sufficient corroborating evidence that the claimed criminal assault had, in fact, taken place.  An officer could have reasonably concluded that Gardner's earring had recently been torn out, likely by Heit.  The Officers were not precluded from making an arrest just because Gardner's ear lobe was not hanging by a thread or displaying a gaping hole.

Last, Heit emphasizes that, per Officer Marcano's police report, Gardner struggled to explain how Heit had grabbed her.  Heit concludes that Gardner was lying and argues that the Officers should have concluded likewise.  But Marcano's report memorializes her post-arrest recollection.  It does not necessarily reflect what a reasonable officer in Marcano's position would have believed when she arrested Heit.  The bodycam footage is the best evidence of that, and for the reasons above the footage shows that the Officers had probable cause.

The Officers are entitled to qualified immunity from Heit's Fourth Amendment claim.

16

### D.    Conclusion

For the reasons above, the Court should **GRANT** the Officers' motion for summary judgment.  (ECF No. 41.)

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 22, 2025

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE